IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

PACIFICA ROSEMONT LLC,

    Plaintiff,

v.                                                                  Case No. 1:22-cv-00392-MLG-SCY

WRONGFUL DEATH ESTATE OF
PHYLLIS MONTOYA, deceased,
by and through Representative
SAMUEL RUYLE, ESQ.,

    Defendant.

**MEMORANDUM OPINION AND ORDER GRANTING
PLAINTIFF'S MOTION TO COMPEL ARBITRATION**

This matter comes before the Court on Plaintiff Pacifica Rosemont, LLC's ("Pacifica Rosemont") Motion to Compel Arbitration, filed May 24, 2022. Doc. 4. Having reviewed the parties' filings and the applicable law, and having considered the parties' arguments at the April 26, 2023, motion hearing, the Court grants the motion.

**BACKGROUND**

On November 30, 2019, Phyllis Montoya was admitted as a resident to Pacifica Rosemont, which is an assisted living facility.[1] Doc. 3-5 at 2. At that time, Ms. Montoya[2] was 93 years of age, and she was in poor health. *Id*. Her diagnoses included dementia, macular degeneration, and persistent atrial fibrillation. *Id*. at 2-3. She required continuous care and assistance for her daily functions. *Id*. at 3. Samuel Ruyle, as the court-appointed representative of Ms. Montoya's estate,

---

[1] The factual background is taken from the state court complaint. Doc. 3-5.

[2] Because Phyllis Montoya and George Montoya share a common surname, the former will be identified hereafter as "Ms. Montoya" and her son will be referenced using his full name.

1

alleges that on December 19, 2019, Ms. Montoya was left unsupervised, and her wheelchair fell backwards causing serious head injuries. Ms. Montoya passed away within a few weeks thereafter. *Id.* at 1, 3. Ruyle subsequently filed suit in state district court against Pacifica Rosemont seeking damages. *See generally id*. Pacifica Rosemont seeks to avoid that litigation and filed a motion to compel arbitration in this forum. Doc. 3. The sole question presented is whether an arbitration clause contained in Ms. Montoya's entry paperwork is binding. *See generally id*.

The first document material to this matter is the Advance Health Care Directive ("AHCD") dated June 10, 2014, which designates Bonnie Berg and George Montoya as Ms. Montoya's agents under a healthcare power of attorney. Doc. 3-1 at 1, 4.[3] The AHCD broadly authorizes Berg and George Montoya "to make all health care decisions for [Ms. Montoya]," including life support decisions; they are also authorized to review her health care information and execute releases or other documents necessary to obtain that information. *Id.* at 1. The AHCD takes effect when either one of two conditions is met: (1) "[Ms. Montoya's] primary care physician and one other qualified health care professional determine that [she is] unable to make [her] own health care decisions[,]" or (2) Ms. Montoya expresses her intent that the AHCD take immediate effect by initialing the appropriate box. *Id.* at 2 ("If I initial this box [__] my agent's authority to make health care decisions for me takes effect immediately."). The box is initialed. *Id.*

The second relevant document is the Residence and Care Agreement, which governs Phyllis Montoya's admission to Pacifica Rosemont. Doc. 3-3. It identifies the parties as Pacifica Rosemont LLC, Ms. Montoya (as the resident), and George Montoya (as Phyllis Montoya's

---

[3] Bonnie Berg and George Montoya are Ms. Montoya's children. Doc. 8 at 3.

"responsible party"). *Id*. at 3.[4] Ms. Montoya's and George Montoya's names are handwritten into blank spaces on a typed document, and George Montoya is the sole family signatory to the contract. *Id*. at 3, 25. However, Berg initialed the section of the Residence and Care Agreement containing the arbitration agreement; "BB" is written in at the bottom of that provision.[5] *Id.* at 23. As the preceding suggests, Berg is not listed as a party to the contract, and she did not sign the Residence and Care Agreement.[6] *Id.* at 23.

## LEGAL STANDARD

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, renders arbitration agreements "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "The Supreme Court has described 'this provision as reflecting both a liberal federal policy favoring arbitration and the fundamental principle that arbitration is a matter of contract.'" *Sanchez v. Nitro-Lift Techs., LLC*, 762 F.3d 1139, 1145 (10th Cir. 2014) (quoting *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1745 (2011)). Thus, courts "begin with a strong presumption that the dispute is arbitrable," *In re Cox Enters., Inc. Set-top Cable Television Box Antitrust Litig.*, 835 F.3d 1195, 1201 (10th Cir. 2016), and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration," *Reeves v. Enter. Prods. Partners, LP*, 17 F.4th 1008, 1011 (10th Cir. 2021). This national policy favoring arbitration extends to the states and "forecloses both state legislative attempts to undercut the

---

[4] The page numbers within the document itself differ from the ECF page numbers appended to the top of the document when it was filed because the document includes a title page and a table of contents before the document's internal page numbering begins. For consistency, the Court will use the ECF page numbers.

[5] The Arbitration Agreement is the only section of the AHCD requiring initialing.

[6] The Arbitration Agreement also includes a provision allowing the signatory to withdraw consent within thirty days of signing, *id.*, but there is no indication that provision was ever invoked.

enforceability of arbitration agreements and state common law principles that interfere with the enforcement of arbitration agreements according to their terms." *Tompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1022 (9th Cir. 2016) (internal quotations and citation omitted). Accordingly, "[e]ven when the state rule at issue is 'a doctrine normally thought to be generally applicable,' such as unconscionability, it may nevertheless be preempted if it has been 'applied in a fashion that disfavors arbitration.'" *Id.* at 1022-23 (quoting *Concepcion*, 563 U.S. at 341).

## ANALYSIS

Pacifica Rosemont moves to compel arbitration, claiming that the Arbitration Agreement binds Ms. Montoya's estate through the signatures of her agents. Doc. 17-1 at 5.[7] Ruyle challenges the validity of the Arbitration Agreement, asserting that it was improperly executed and that it is unconscionable because it allows Pacifica Rosemont to litigate some claims while requiring arbitration of others.[8] Doc. 8 at 12. Each of these arguments is addressed in turn below.

**I.     Ms. Montoya's agents had authority to bind her to the Arbitration Agreement.**

**A.  The AHCD took effect immediately upon signature by Ms. Montoya.**

Ruyle first argues that the AHCD was not in effect at the time of Ms. Montoya's death because, in his view, "it is effective *only when* Ms. Montoya's primary care provider or other qualified healthcare professional determines she is unable to make her own healthcare decisions."

---

[7] Pacifica Rosemont's original filing contained faulty links to case citations that were apparently the result of a "technical issue." Doc. 17 at 1. It subsequently filed a notice of errata with a corrected copy of its motion to compel arbitration attached thereto as Exhibit 1. *Id.*

[8] Pacifica Rosemont also asserts that the Arbitration Agreement, and the Residence and Care Agreement more broadly, are enforceable against Montoya's wrongful death estate—that is, that the agreement applies to the current action notwithstanding Montoya's death. Doc. 4 at 4. Ruyle does not argue otherwise, *see generally* Doc. 8, and therefore concedes the point. *See Rock Roofing, LLC v. Travelers Cas. & Sur. Co. of Am.*, 413 F. Supp. 3d 1122, 1128 (D.N.M. 2019) (failure to substantively respond to issue in response or surreply waives the issue).

4

Doc. 8 at 9 (emphasis in original). This assertion is not entirely correct. Section C.3 of the AHCD provides as follows:

> My agent's authority becomes effective when my primary care physician and one other qualified health care professional determine that I am unable to make my own health care decisions. If I initial this box [ ] my agent's authority to make health care decision for me takes effect immediately.

Doc. 3-1 at 2. As this text indicates, there are two distinct ways that the AHCD may become operative. First is the circumstance Ruyle addresses in his response—i.e., when Ms. Montoya's doctor and a second medical professional determine that she is unable to make her own healthcare decisions. Second is when Ms. Montoya immediately grants her agents authority to make healthcare decisions by initialing the appropriate box. Doc. 3-1 at 2. That is the case here. Ms. Montoya initialed the AHCD thereby providing immediate consent to her agents make healthcare decisions on her behalf. Thus, the AHCD became effective once it was signed by Ms. Montoya.[9] Doc. 11 at 2.

### B. The AHCD authorized George Montoya and Berg to enter into an arbitration agreement on behalf of Ms. Montoya.

Ruyle takes issue with the scope of the AHCD. Specifically, he contends that the AHCD language permitting Montoya's agents to "make all health care decisions for [her]" does not provide corresponding authority to enter financial and legal transactions. Doc. 8 at 8. Whether a healthcare power of attorney allows an individual to sign an assisted living facility contract that includes an arbitration clause presents a complex question of law and fact. In deciding the issue, this Court is guided by New Mexico state court pronouncements regarding contracts and agency. *See Hardin v. First Cash Fin. Servs.*, 465 F.3d 470, 475 (10th Cir. 2006) ("[C]ourts should apply

---

[9] Ruyle does not dispute the validity of Ms. Montoya's signature. Doc. 19-1 at 27.

ordinary state-law principles that govern the formation of contracts to determine whether a party has agreed to arbitrate a dispute." (internal quotation marks omitted)).

The case of *Barron v. Evangelical Lutheran Good Samaritan Society* is on point. 2011-NMCA-094, 150 N.M. 669, 265 P.3d 720. There, the New Mexico Court of Appeals addressed agency relationships in the context of nursing home admission paperwork. The court explained that "whether to admit an aging parent to a particular care facility is a healthcare decision" and therefore "revocable arbitration agreements may be executed as part of the healthcare decision making process." *Id*. at ¶ 26 (internal brackets and quotation marks omitted) (quoting *Garrison v. Super. Ct.*, 132 Cal. App. 4th 253, 33 Cal. Rptr. 3d 350, 358, 360-361 (Ct. App. 2005). Based on this conclusion, the *Barron* court ruled that "an agent with authority to complete the documents for admission is likewise permitted to decide on behalf of the principal whether future disputes with the facility should be arbitrated or litigated." *Id*. at ¶26. Notably, in reaching its decision, the New Mexico Court of Appeals expressly rejected the proposition that "authority under a healthcare power of attorney without further indication of authority is insufficient to allow the agent to bind the principal to arbitration." *Id*. ¶ 29.

The Court can find no basis to depart from *Barron*'s holding. The AHCD grants both George Montoya and Berg the power to make healthcare decisions for their mother, and per *Barron*, the Court must consider admission into an assisted living facility to be a healthcare decision.[10] *See id*. ¶ 26 ("[W]hether to admit an aging parent to a particular care facility is a [healthcare] decision."). This authority includes corresponding permission to enter into the

---

[10] George Montoya and Berg were not obligated to sign the arbitration agreement. They chose to do so. Doc. 3-3 at 23 ("By initialing below . . . you understand that agreeing to arbitration is not a condition of admission to [Pacifica Rosemont]."). And although Ms. Montoya and her agents had an additional 30 days to withdraw that consent, *id.*, Ruyle provided no evidence that they sought to amend the agreement.

arbitration agreement, which was incorporated as an optional part of Residence and Care Agreement admission materials. *See id.* That Berg signed off on the Arbitration Agreement, rather than George Montoya, does not require a different result. Montoya provided both George Montoya and Berg with express authority to make healthcare decisions, and this power incorporates the power to agree to an arbitration agreement. *See Barron*, 2011-NMCA-094, ¶ 26. While it is curious that Berg would initial the arbitration provision given that George Montoya is the sole signatory to the Residence and Care Agreement, the oddity is immaterial. Bonnie Berg possessed agency to authorize on Montoya's behalf even as a nonparty.

II.   **The Tenth Circuit's decision in *Patton* forecloses invalidation of the Arbitration Agreement on unconscionability grounds.**

Finally, Ruyle argues that the arbitration agreement is substantively unconscionable. Ruyle reasons that because the Arbitration Agreement excludes small claims and eviction claims—each of which is likely to be brought by a nursing home or assisted living facility—it is unfairly one-sided. Doc. 8 at 12. Ruyle's argument finds support in New Mexico decisional authority. State courts have deemed arbitration agreements (like the one included in Pacifica Rosemont's Admission and Care Agreement) as unconscionable where one party is forced to litigate claims that will likely be brought against them but required to arbitrate those claims they are likely to initiate.[11] *See, e.g., Peavy*, ¶¶ 5, 25-27 (unconscionable when nursing home arbitration agreement exempted "disputes pertaining to collections or discharge of residents"); *Figueroa v. THI of N.M.*

---

[11] The New Mexico Supreme Court has adopted a two-step inquiry for assessing the unconscionability of an arbitration agreement, asking first whether the agreement is facially one-sided (such as by exempting the drafter's likeliest claims from arbitration but compelling arbitration for the non-drafting party's likeliest claims) and second whether the facial one-sidedness is fair and reasonable. *See Peavy v. Skilled Healthcare Grp., Inc.*, 2020-NMSC-010, ¶¶ 25-27, 470 P.3d 218.

*at Casa Arena Blanca, LLC*, 2013-NMCA-077, ¶¶ 2, 28-30, 306 P.3d 480 (unconscionable when nursing home arbitration agreement exempted "guardianship proceedings, collection and eviction actions initiated by the Health Care Center, [and] any dispute where the amount in controversy is less than [$2,500.00]").

The problem Ruyle faces here, however, is that binding precedent expressly rejects the New Mexico state court approach. In *THI of N.M. at Hobbs Center, LLC v. Patton*, 741 F.3d 1162, 1169 (10th Cir. 2014), the Tenth Circuit held that the "rationale for the state unconscionability rule runs counter to Supreme Court precedent" and that the FAA preempts New Mexico unconscionability law when the state law is premised on the belief that arbitration is inferior to litigation. *Patton* precludes this court from "rely[ing] on the uniqueness of an agreement to arbitrate as a basis for a state-law holding that enforcement would be unconscionable." *Patton*, 741 F.3d at 1168 (quoting *Concepcion*, 563 U.S. at 341). This legal maxim applies even though "the claims most likely to be brought by residents are the ones that must be arbitrated, while the claims most likely to be brought by [the nursing home] are to be litigated in court."[12] *Patton*, 741 F.3d at 1168-69. While the Court is sympathetic to Ruyle's position, *Patton* is controlling. The Court is barred from invalidating the challenged arbitration agreement based on claims of unconscionability.

---

[12] Relying on *Patton*, other courts in this district have rejected the argument that one-sidedness can render an arbitration agreement unconscionable. *See La Frontera Ctr., Inc. v. United Behavioral Health, Inc.*, 268 F. Supp. 3d 1167, 1223-25 (D.N.M. 2017) ("Moreover, [*Figueroa*] is not good law, at least for the courts in the Tenth Circuit."); *Guarriello v. Asnani*, No. 1:19-cv-01184, 2020 WL 7495603, at *4-5 (D.N.M. Dec. 21, 2020) (rejecting one-sidedness argument based on *Patton* but finding arbitration agreement unenforceable on other grounds); *Shirk v. Gonzales*, No. 1:17-cv-01129, 2018 WL 2426263, at *4-5 (D.N.M. May 29, 2018) (finding that *Patton* precludes federal district courts from employing unconscionability analysis as articulated in *Figueroa*); *Saiz v. Wells-Fargo Bank, N.A.*, No. 1:16-cv-01155, 2017 WL 5643228, at *2-3 (D.N.M. July 17, 2017) (same); *SRI of N.M., LLC v. Hartford Fire Ins. Co.*, No. 2:14-cv-00781, 2015 WL 12803774, at *6-8 (D.N.M. June 26, 2015) (same).

### III. Neither additional discovery nor an evidentiary hearing is necessary to resolve the instant dispute.

Ruyle seeks leave "to conduct discovery and an evidentiary hearing regarding the making, enforceability, and validity" of the Arbitration Agreement. Doc. 8 at 16. However, continued litigation is not necessary. The parties do not dispute the facts underlying the arbitration dispute or the authenticity of the relevant documents; rather, their dispute focuses on the application of the law to those materials. Accordingly, discovery would not aid resolution of the current dispute, and the Court therefore denies Ruyle's request.

### IV. The parties' supplemental filings are denied as moot.

During the hearing on this matter, the Court asked the parties about the applicability of the Tenth Circuit's decision in *Patton* to the instant dispute as that case had not been addressed in the parties' briefing. That discussion prompted additional filings by the parties requesting, *inter alia*, leave to file a surreply. Docs. 19, 20, 21. However, additional briefing on that authority is unnecessary and will not be of assistance to the adjudication of the motion to compel arbitration. *See Plunkett v. Dep't of Just.*, 249 F. Supp. 3d 73, 75 n.2 (D.D.C. 2017) ("The decision to grant or deny leave to file a surreply is committed to the sound discretion of the Court, and in making its decision, the Court considers whether the surreply is helpful to the adjudication of the motion for summary judgment. . . .") (internal quotation marks omitted)). For this reason, Pacifica Rosemont's notice of supplemental authority and the motions to strike and file surreplies (Docs. 19, 20, 21) are denied as moot.

## CONCLUSION

The contract, including its arbitration provision, is validly signed and binding. It cannot be invalidated based on the claims that it is unconscionable (at least as that argument is made in this case). As a result, Pacifica Rosemont's Motion to Compel Arbitration, Doc. 4, is granted.

9 U.S.C. § 3 requires the Court to stay an action pending arbitration upon request by one of the parties. Here, no party has requested a stay pending arbitration, and therefore the Court may dismiss the action. *See Armijo v. Prudential Ins. Co. of Am.*, 72 F.3d 793, 797 (10th Cir. 1995) (no error in dismissing after granting motion to compel arbitration when dismissal was requested and no party requested a stay). Indeed, the only dispute in the federal case is whether the state wrongful death claims must be arbitrated, so by resolving this question on the Motion to Compel Arbitration, the Court has disposed of the federal controversy in its entirety. The federal case is therefore dismissed.

It is so ordered.

_____
UNITED STATES DISTRICT JUDGE
MATTHEW L. GARCIA